UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA,

v.   Case No. 8:21-cr-227-SDM-AAS

MARY LOU BJORKMAN,
     Defendant.
_____/

## SENTENCING MEMORANDUM

Defendant, MARY LOU BJORKMAN, respectfully submits this Sentencing Memorandum for this Honorable Court's consideration. Mrs. Bjorkman requests this Court impose a downward variance in this case pursuant to 18 U.S.C. § 3553.

## BJORKMAN WAS UNAWARE OF THE NEWSTAR WEBSITES AND THEIR CONTENT

It is and has always been the position of Marylou Bjorkman that she was unaware of the content of the Newstar Websites. In fact, her husband, co-conspirator Mark Bjorkman primarily kept his business to himself, and is she asked about it he would get angry. Her position on this matter is shared by the United States as indicated in their sentencing memorandum:

"The information available to the United States makes it mor likely than not that Bjorkman was unaware of the Newstar Websites and their content. This conclusion is supported by three independent reasons. First, the United States has uncovered no evidence during its extensive investigation indicating, even by implication or circumstance, that Bjorkman knew about the child-exploitative content of the Newstar Websites. Second, the investigation uncovered at least one

communication between Newstar principals specifically suggesting that Bjorkman was unaware of the Newstar content. In particular, on May 8, 2018, M.R.B. emailed Kenneth Power and said, "Just so you know, ML still doesn't know what you do, so don't let her know. She is not as easy going on that as Mrs. P. ML would probably want an immediate divorce…" ML in these emails refers to Mary Lou Bjorkman, and the email expressly contrasts "ML's" knowledge of the Newstar Websites with that of "Mrs. P.," which refers to Patrice Wiloski-Mevorah. Third, Tatiana Power, who laundered money for and played a central role in the Newstar Enterprise, told the United States that her former husband, Kenneth Power, had mentioned that Bjorkman was never told anything about the Enterprise because Power condidered her a drinker and a troublemaker."" (Doc. 48, at 2-3 foonote 1)

## STATEMENT OF FACTS

On July 21, 2021, Mrs. Bjorkman pled guilty to conspiracy to commit Money Laundering in violation of 18 U.S.C. § 1956(h). Doc. 13. Mrs. Bjorkman's sentencing hearing is set for March 14, 2022. Doc. 49. The Presentence Report (PSR) calculates Mrs. Bjorkman's total offense level as a level 19 with a criminal history category of 1. *See* PSR, Doc. 46 at ¶¶ 43, 48. As a result, Mrs. Bjorkman is facing a discretionary guideline sentencing range of 30 to 37 months of incarceration. *Id*. at ¶ 89.

## MEMORANDUM OF LAW

Because each of the § 3553 factors support Mrs. Bjorkman's request for a variance in their unique and separate ways, this memorandum concludes that a guideline sentence is greater than necessary under these statutory factors.

**(I)** **Booker and its Progeny Provides the Court with the Discretion to Impose**

## **a Sentence of Community Supervision including Home Detention**

A district court's discretion is no longer limited by the guidelines since its matrix is now merely advisory. *United States v. Booker,* 543 U.S. 220, 245-67 (2005). A court is unencumbered in its ability "to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Gall v. United States*, 552 U.S. 38, 53 (2007) (quoting *Koon v. United States,* 518 U.S. 81 (1996)). Thus, courts must impose a punishment that "fit[s] the offender and not merely the crime." *Pepper v. United States 476 U.S.* at 487–88 (2011)(citation omitted).  As this individualized assessment, the Sentencing Reform Act specifically provides that "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. § 3661.

Consistent with this principle, § 3553(a) requires sentencing courts to consider not only the advisory Guidelines range, but also the facts of a specific case through the lens of seven factors as discussed below. *See* 18 U.S.C. § 3553(a)(1)-(7). Nevertheless, "[s]entencing courts have long enjoyed discretion in the sort of information they may consider when setting an appropriate sentence. This durable

tradition remains, even as federal laws have required sentencing courts to evaluate certain factors when exercising their discretion." *Dean v. United States*, 581 U.S. –––, 137 S.Ct. 1170, 1175 (2017)(citing *Pepper*, 562 U.S. at 487–89)).

Against the backdrop of the statutory factors, a guideline sentence in Mrs. Bjorkman's case would necessarily violate the requirement that a defendant's sentence be sufficient but not greater than necessary to satisfy the purposes of § 3553(a). *See Pepper*, 562 U.S. 476 (a "sentencing judge's overarching duty under § 3553(a) [is to] to impose a sentence sufficient, but not greater than necessary").

**(II)** **An Examination of the § 3553 Factors Establishes that a Variance is Warranted in Mrs. Bjorkman's case**

The following sections analyze the § 3553 factors against the factual backdrop of Mrs. Bjorkman's case. Such an analysis indicates that each of these sentencing factors support the Defendant's request for a variance.

**(1)** **The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant**

The significance of this first § 3553 factor is found in its comprehension that Mrs. Bjorkman's crimes must be considered in the context of her entire life. Such a broad consideration in her case reveals a narrative of significant mitigation involving both her offense conduct and the history and characteristics that led to her crime.

### *(a)   Nature and Circumstances of the Offense*

An analysis of Mrs. Bjorkman's criminal conduct indicates that it was in a significant part the unfortunate result of the pressure and undue influence of her late husband who was psychically and emotionally abusive towards her.

### **(b)   *History and Characteristics of the Defendant***

In assessing Mrs. Bjorkman's history and characteristics, the genesis of her criminal conduct is found in her past. Indeed, an examination of Mrs. Bjorkman's dysfunctional childhood and being a victim of abuse since she was a child, throughout her adult life shed light on the factors leading to her criminal behavior.

From an early age, Mrs. Bjorkman was raised in an environment of abuse. *See* PSR at ¶ 58. When Mrs. Bjorkman was 15 years old, she sought counseling due to the longstanding abuse, primarily by her father. When she was 19 years old she was sexually assaulted by a friend's acquintance. PSR at ¶ 70. When she tried to move back to her childhood home at the age of 21, she met with additional abuse. PSR at ¶ 58.

The impact of this dysfunctional background on Mrs. Bjorkman's development cannot be overstated. *See* Egeland, Yates, Appleyard, & van Dulmen*, The Long-Term Consequences of Maltreatment in the Early Years: A Developmental Pathway Model to Antisocial Behavior,* Child. Serv.: Social Policy Research and

Practice, 5(4), 249-260 (2002); *United States v. Rivera,* 192 F.3d 81, 84 (2d Cir. 1999)("It seems beyond question that abuse suffered during childhood – at some level of severity – can impair a person's mental and emotional conditions"); *Santosky v. Kramer*, 455 U.S. 745, 789 (1982)(Rehnquist, J. dissenting) ("It requires no citation of authority to assert that children who are abused in their youth generally face extraordinary problems developing into responsible, productive citizens").

The unremarkable contention that a childhood marked by abuse impacts the individual's development is evident in Mrs. Bjorkman's life. In so many ways, the blueprint for Mrs. Bjorkman's conduct was written years before she committed her crime.

During her adult years, Mrs. Bjorkman unfortunately continued to be in relationships with partners who were both physically and emotionally abusive. *See* PSR at ¶¶ 60 - 61. The abuse included being sodomized by her most recent spouse and co-conspirator, Mark Bjorkman, to the point where she was bleeding from her anus. *Id*.

Shortly after learning of the federal investigation that brings us to court in this matter, her husband committed suicide. The suicide was a very tragic event, but also his final act of emotional abuse towards Mrs. Bjorkman. *Id.*

Presumably, in large part because of the exposure to violence as a child and

an adult, Mrs. Bjorkman descended into mental illnesses that she struggles with to this date. Fortunately, she recognizes the need for treatment and is compliant with the same *See id.* at ¶¶ 70 -72. She also has supportive family and friends by her side despite her criminal conduct and the pending sentencing. Exhibit 1.

While Mrs. Bjorkman's dysfunctional background cannot excuse her conduct, it does explain and mitigate her actions. That is, the degree of a defendant's blameworthiness is "assessed according to two kinds of elements: the nature and seriousness of the harm caused or threatened by the crime; and the offender's degree of culpability in committing the crime, in particular, his degree of intent (mens rea), motives, role in the offense, and mental illness or diminished capacity." Richard S. Frase, *Excessive Prison Sentences, Punishment Goals, and the Eighth Amendment: "Proportionality" Relative to What?*, 89 Minn. L. Rev. 571, 590 (Feb. 2005).

Applying the foregoing discussion to Mrs. Bjorkman's case underscores that her culpability or blameworthiness is mitigated by both her lifelong environment of abuse and resulting long-standing mental illnesses.

**(2) The Need for the Sentence Imposed**

    **(a)** *To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense*

Recognizing Mrs. Bjorkman's lesser culpability compels the conclusion that the advisory guideline range of imprisonment effectuates an unjust result. While

"[r]etribution is a legitimate reason to punish ... 'the heart of the retribution rationale is that a criminal sentence must be directly related to the personal culpability of the criminal offender.' " *Graham v. Florida*, 560 U.S. 48, 71 (2010)(citation omitted).

### (b)   *To afford adequate deterrence to criminal conduct*

The preceding section established that a lengthy prison sentence is not necessary to accomplish a just sentence. In turn, this section addresses the question of whether a long prison sentence will accomplish the § 3553 factor of deterrence. Such an examination requires an analysis of both general and specific deterrence.

#### (i)   *General Deterrence*

The principle of general deterrence is based on the premise that incarceration deters crime. This error has resulted in the mass incarceration of individuals in the United States. *See* Dr. Oliver Roeder et al., *What Caused the Crime Decline?*, Brennan Ctr. for Justice, 22-23 (Feb. 12, 2015). The condition of mass incarceration is especially troubling since there is no correlation between punishment and reductions in crime. *See id.* The United States Department of Justice agrees with the conclusion that incarcerating defendants is not an effective means of deterrence. *See* U.S. Dept. of Justice, Nat'l Inst. of Justice, *Five Things About Deterrence* (July 2014), attached hereto as Exhibit 2. In fact, the Department of Justice finds that even increasing the severity of punishment does little to deter punishment. *See Id.*

      (ii) *To protect the public from further crimes of the defendant*

 A term of imprisonment will not have a positive impact on Mrs. Bjorkman's risk of recidivism. That is, the empirical evidence does not establish a relationship between sentence length and specific deterrence, regardless of the type of crime. *See* National Institute of Corrections*, Myths and Facts, Why Incarceration is Not the Best Way to Keep Communities Safe* (2016), attached hereto as Exhibit 3; *see also* Donald P. Green & Daniel Winik, *Using Random Judge Assignments to Estimate the Effects of Incarceration and Probation on Recidivism among Drug Offenders*, 48 Criminology 357 (2010) (study of over a thousand offenders found that such variations "have no detectable effect on rates of re-arrest .. ."). In sum, the best available evidence establishes that imprisonment does not reduce recidivism more than noncustodial sanctions. Francis T. Cullen et al., *Prisons Do Not Reduce Recidivism: The High Cost of Ignoring Science*, 91 Prison J. 48S, 50S-51S (2011).

 In this regard, the 2016 study by the National Institute of Corrections establishes three critical tenets. First, incarceration has a negligible impact on crime prevention. *See* Ex. 1 at 4. Instead, a longer prison sentence may actually lead to a greater risk of recidivism. *See id*. Moreover, harsh penalties do not improve the long-term outcomes of the offender. Ex. 3 at 4. *See also* Friedrich Nietzsche, *The Genealogy of Morals*, essay 2, aph. 14 (1887)("All in all, punishment hardens and

renders people more insensible; it concentrates; it increases the feeling of estrangement; it strengthens the power of resistance."*).* Finally, community correction programs are more effective in reducing recidivism. *Id*. at 5.

## CONCLUSION

As the foregoing establishes, the unique circumstances presented in Mrs. Bjorkman's case warrant a variance below the applicable guideline range to a sentence of community supervision including a period of home detention if deemed appropriate and necessary.

Respectfully Submitted,

*s/ Bjorn E. Brunvand*
BJORN E. BRUNVAND, ESQ.
Counsel for the Defendant

_____

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 9, 2022, I electronically filed the following with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to counsel for all parties.

                                              *s/ Bjorn E. Brunvand*
                                              BJORN E. BRUNVAND, ESQ.
                                              Counsel for the Defendant
                                              615 Turner Street
                                              Clearwater, Florida 33756
                                              Telephone No.: (727)446-7505
                                              Facsimile No.: (727)446-8147
                                              Email: bjorn@acquitter.com
                                              Florida Bar No. 831077